OPINION
{¶ 1} Defendant-appellant Christopher F. Hale appeals his February 12, 2002, conviction in the Licking County Municipal Court on one count of criminal damaging or endangering, in violation of Section 541.03(a)(1) of the Granville Codified Ordinances.
 STATEMENT OF THE FACTS AND CASE {¶ 2} On November 21, 2000, appellant was charged with one count of criminal damaging or endangering, in violation of Section 541.03(a)(1) of the Granville Codified Ordinances. The charges arose from an incident on September 27, 2001, at approximately 2:46 a.m., when two trees belonging to the Village of Granville were damaged.
 {¶ 3} A bench trial was conducted on February 12, 2002. The trial court found appellant guilty. Appellant was sentenced to 30 days in jail, which were suspended, and ordered to pay a $200.00 fine plus court costs.
 {¶ 4} It is from appellant's conviction that appellant appeals, raising the following two assignments of error:
 {¶ 5} "I. THE EVIDENCE WAS INSUFFICIENT TO FIND APPELLANT GUILTY AND THUS, APPELLANT IS ENTITLED TO A JUDGMENT OF ACQUITTAL PURSUANT TO RULE 29 OF THE OHIO RULES OF CRIMINAL PROCEDURE.
 {¶ 6} "II. APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 I II {¶ 7} In appellant's assignments of error, appellant argues that appellant's conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. This court shall consider appellant's assignments of error together.
 {¶ 8} In considering an appeal concerning the sufficiency of the evidence, our standard of review is as follows: "[T]he inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." State v. Jenks
(1991), 61 Ohio St.3d 259, 273, 574 N.E.2d 492. In considering questions of manifest weight, our standard of review is stated as follows: "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v.Martin (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. See also, Statev. Thompkins (1997), 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. The granting of a new trial "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin,20 Ohio App.3d at 175.
 {¶ 9} Appellant was convicted of one count of criminal damaging or endangering, in violation of Sec. 541.03(a)(1) of the Granville Codified Ordinances, a misdemeanor of the second degree. That Ordinance states the following: "No person shall cause, or create a substantial risk of physical harm to any property of another without the other person's consent: . . . Knowingly, by any means. . ." The parties stipulated that the property in question, trees, belonged to the Village of Granville and that no consent was granted to disturb those trees.
 {¶ 10} The following testimony was elicited at trial: William Zink was awoken at approximately 2:30 a.m., September 27, 2001, when he heard a commotion outside of his house. Zink listened for a minute or less and then ran downstairs. As he was coming down the steps, he looked out the front window and saw several figures outside. He saw a tree being yanked back and forth. The tree was about 25 feet from the porch. Zink stepped out onto the front porch and saw five or six people and the tree falling to the ground. Zink saw two people stepping away from the falling tree, while facing Zink. One of those two people stood out to Zink. Zink testified that he saw a person in a white short-sleeved shirt, about five feet ten inches tall, a little more than 160 pounds, with light brown hair, with a distinctive part in the middle, and "with a little bit pudgy" features. Transcript of Proceedings, pg. 30. Zink yelled at the people and they laughed. Zink went back into the house to dress. When he came back, the people were gone and the tree was bent down and lying in the street. Zink saw the people "up the hill, up Burg Street." Id. at 32. Zink attempted to call to them to delay them since the police were on their way. However, after a slight pause, the group continued up the street. Within about a minute, a police cruiser and a sheriff cruiser arrived. Zink told Officer Blackledge, of the Granville Police Department, that the group was up the hill. The Officer proceeded to attempt to find the group.
 {¶ 11} The Officer saw the group and yelled to them to stop. Five of the six ran. The one that did not run was appellant. Officer Blackledge testified that when he approached appellant that night, appellant had grass stains and considerable dirt on his pants in the knee and shin area. Appellant had scratches and abrasions on his hands, grass stains on the tips of his shoes and was wearing a white tee shirt. The Officer further described appellant as appearing to be about five foot ten inches tall, a hundred and eighty pounds, and having a distinctive part in his light brown hair.
 {¶ 12} Zink identified appellant as the person in the white shirt that he had seen backing away from the tree when he first went on the porch. Zink testified that as appellant sat in the back of the police cruiser and Zink identified appellant, appellant impudently and arrogantly "pointed at himself and said I'm it, I'm it. Oh, I'm it. I'm the one." Id. at 35.
 {¶ 13} After being taken to the Police Department, appellant gave a statement to Officer Blackledge. At first, appellant claimed that he was not involved with the damage to the two trees and that he had not seen anybody else in the area. However, subsequently, the Officer told appellant that there was a chemical that could be used on appellant's hands to see if he had been in contact with wood. While the Officer had no such chemical, the Officer wanted to see appellant's response. In response, appellant changed his story. Appellant then told Officer Blackledge that he had seen two trees lying down and that he had picked one of them up and then placed it back on the ground, just before the Officer saw him that night.
 {¶ 14} Upon review of the evidence presented, we find that the conviction was supported by sufficient evidence and was not against the manifest weight of the evidence. Appellant was identified as one of the people backing away from the tree as it fell. Appellant had grass stains, dirt stains, scratches and abrasions on his person consistent with damaging the trees. Further, appellant chose to change his statement about his involvement once he was concerned that his story might not hold up under further scrutiny. In viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Further, we find that the trier of fact did not lose its way nor create a miscarriage of justice.
 {¶ 15} Appellant's first and second assignments of error are overruled.
 {¶ 16} The Judgment of the Licking County Municipal Court is affirmed.
By Edwards, J., Gwin, P.J. and Farmer, J. concurs
Topic: Criminal Endangering — Manifest Weight